## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
MARCUS MCDANIEL,               )
                               )
         Plaintiff,            )
                               )
             v.                )    Civil Action No. 12-723 (EGS)
                               )
THOMAS VILSACK,                )
Secretary of USDA,             )
         Defendant.            )
_____)
```

### MEMORANDUM OPINION

Plaintiff Marcus McDaniel worked as a Safety & Occupational Health Manager for the Natural Resources Conservation Service ("NRCS") at the U.S. Department of Agriculture ("USDA") from August 2008 to July 2009. Compl., ECF No. 1, ¶ 1. Mr. McDaniel (African-American) was terminated during his one-year probationary period for unsatisfactory performance and behavior. *Id.* On May 4, 2012, Mr. McDaniel filed a Complaint against the Secretary of Agriculture, Thomas Vilsack ("Secretary" or "Defendant"), alleging that Mr. McDaniel's supervisors discriminated against him because of his race and sex by harassing him and terminating his employment in violation of Title VII of the Civil Rights Act of 1964, 43 U.S.C. § 2003, *et seq.*, and 42 U.S.C. § 1981. *Id.* The Secretary has moved for summary judgment on the basis that Mr. McDaniel was lawfully

terminated during his one-year probationary period for legitimate, non-discriminatory reasons, including his aggressive and unprofessional behavior. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp."), ECF No. 32 at 7. Defendant further maintains that Mr. McDaniel is unable to prove the stated reasons for his termination were actually pretext for racial or sexist animus. *Id.* 23-24. Upon review of Defendant's motion, the responses and replies thereto, and for the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.[1]

## I.   BACKGROUND

### A. Mr. McDaniel's employment at NCRS

Mr. McDaniel started working for NCRS on August 18, 2008 as its Safety and Occupational Health Manager, subject to a one-year probationary period. Compl. ¶ 4. Ms. Sandra McWhirter (African American) served as Mr. McDaniel's immediate supervisor and Mr. John Glover (African American) served as his second level supervisor. *Id.* ¶ 7. Mr. McDaniel got along well with Ms. McWhirter and Mr. Glover. *Id.* In April 2009, Mr. McDaniel received a positive review from Ms. McWhirter. *See* ECF No. 35-10 at 1-8.

Mr. McDaniel claims that "everything changed" in January 2009 when Mr. Glover, who served as the head of Human Resources ("HR"), was replaced by Ms. Eloris Speight (African American)

---

[1] This case was randomly referred to the undersigned on April 6, 2016. *See* April 6, 2016 docket entry.

who "took an active dislike to plaintiff." *Id.* ¶ 8. One point of contention between Ms. Speight and Mr. McDaniel was her concern about where his position should fall within the USDA's organizational structure. McDaniel 2014 Dep., ECF NO. 32 at 80; 26: 6-20. Ms. Speight even directed Mr. McDaniel to research the question. *Id.* 73:21-22. Mr. McDaniel perceived Ms. Speight's inquiry as a threat, alleging that Ms. Speight "threateningly pointed out to plaintiff that she could fire him at any time— and for no reason at all—during his probationary period . . . ." *Id.* ¶ 10. In June 2009, Ms. McWhirter was replaced by Ms. Yevette Gray (African American) and Ms. Letitia Tommer (African American). After this transition, Mr. McDaniel alleges that "things became even more hostile" for him. Pl.'s Mem. Opp. at 3.

The remainder of Mr. McDaniel's Complaint includes sparse factual allegations. Mr. McDaniel summarily argues that "defendant, through his subordinate managers at the NRCS, discriminated against plaintiff based on his race and sex by (i) harassing him on the job (ii) preventing him from performing his duties and responsibilities, and (iii) terminating his employment with USDA and removing him from the Federal Service effective July 31, 2009." Compl. ¶ 16. Although not alleged in his Complaint, Mr. McDaniel testified during his deposition that Ms. Speight told him that he is not white and should "stop acting white." McDaniel Deposition, ECF No. 32 at 82; 32: 3-13.

- 3 -

Ms. Speight denies ever making such a statement. Speight Dep., ECF No. 35 at 23. Mr. McDaniel also testified that his termination was motivated by race and his gender because:

> The fact that me being articulate and well-versed in what I was doing was either unacceptable to Eloris, Yvette, and Tish, or unbelievable. So I assumed they had a common mind frame, like if – it can't be what it looks like, so why are we to assume anything other than what Eloris is telling us, or why do we care, why don't we look into it for ourselves.

McDaniel 2011 Dep., ECF No. 32, 12-13.

### B. Concerns about Mr. McDaniel's aggressive behavior and professionalism

Numerous colleagues expressed concern about Mr. McDaniel's aggressive and unprofessional behavior. Def.'s Mem. Supp., ECF No. 32 at 3-7. The reported incidents generally involved Mr. McDaniel acting unprofessionally by raising his voice to superiors, making inappropriate comments and displaying disrespectful body language during meetings. *See e.g.* Deposition of Denise Cooke ("Cooke 2011 Dep."), ECF No. 32 at 25, Ex. 2 at 117:18 – 118:1 ("I heard his loud voice more than one time."); Deposition of Eloris Speight ("Speight 2011 Dep.), ECF No. 32 at 37, Ex. 3 at 92:16 – 92:21 (testifying that Mr. McDaniel often raised his voice to the point that Ms. Speight felt that "she was not going to take his disrespect, you know, any longer."). One incident was so disturbing that agency employees discussed whether they should call security. *See e.g.* Deposition of Sandra

Detter ("Detter 2011 Dep."), ECF No. 32 at 53, Ex. 4 at 59:5-59:17 (" I remember [] when I heard a loud and angry male voice coming through the wall from the next - from the office next door . . . the incident was unusual because it was not normal to be able to hear voices through the wall."); *Id.* at 61:13-61:15 ("Well, I wonder[ed] what's going on, Denise said you need to call - should we call security, you know, we don't know - we didn't know what to do."). Mr. McDaniel does not deny that he raised his voice to his supervisors, but testified that "I would not have said anything in a threatening manner." Deposition of Marcus McDaniel ("McDaniel 2014 Dep."), ECF No. 32 at 86, Ex. 9.

Several female staff members testified that they felt "afraid" of Mr. McDaniel, particularly because they believed he was allowed to carry a gun for his duties. Cooke Dep., ECF No. 32 at 34; 121:11-122:10 ("Q. Then on what basis where you afraid of him? A. Because I heard him expressing a loud voice. [] He seemed to have something pinned up or built up inside of him and I felt intimidated.") Some staff members created an escape plan in the event Mr. McDaniel "snapped" and turned violent. Cooke 2011 Dep. at 119:8-119:19 ("He put me in fear that he might snap" and "if he snapped, I'm not sure what he might do.").

Mr. McDaniel was also prone to acting unprofessionally in meetings. Detter 2011 Dep., ECF No. 32 at 55; 18:10-18:19; 23:14-23:17. Mr. McDaniel would throw himself back in his chair,

roll his eyes, and sigh. *Id.*, ECF No. 32 at 59; 54: 5-10 ("at the time, I had a teenage daughter at home – and he was acting just like her, and I thought it was just disrespectful."). Several employees also observed and reported Mr. McDaniel's rude and inappropriate behavior towards his supervisor, Ms. Speight. Deposition of Rebecca Rogenbuck ("Rogenbuck Dep."), ECF No. 32 at 6, 60:18-61:13 ("Q: And when he told you that he said this to her, what was your opinion of that communication by Mr. McDaniel? A: I thought that was a rude thing to say to a supervisor.").

**C. Mr. McDaniel's termination**

Toward the end of Mr. McDaniel's probationary period, Ms. Speight conducted a meeting of his current supervisors and other HR personnel to discuss whether Mr. McDaniel passed his probationary period. Speight Dep., ECF No. 32 at 42 -43. At that meeting, no disagreement was expressed with the recommendation to terminate Mr. McDaniel, whose termination letter stated, in part:

> Based on feedback received from management, it has been determined that your conduct in performing your job has been unsatisfactory. During your short tenure with the Agency, you have demonstrated an unwillingness to accept direction and accomplish work items as prescribed. Moreover, the manner in which you have behaved in dealings with management and other agency personnel related to such matters as Environmental Management Systems (EMS), interagency contract acquiring Employee

- 6 -

> Assistance Program (EAP) and Office of
> Workers' Compensation (OWCP) services, etc.,
> has been challenging and unprofessional. It is
> our determination that during your
> probationary period you have failed to
> demonstrate your potential to be an asset to
> the agency.

McDaniel Termination Letter, ECF No. 32-1 at 72.

In support of this litigation, Mr. McDaniel obtained
affidavits from Mr. Glover and Ms. McWhirter. Glover Aff., ECF
No. 35, Ex. 12; McWhirter Aff., ECF No. 35, Ex. 13. Mr. Glover
states that "[d]uring the time I was his second line supervisor,
I had no issues or concerns with [Mr. McDaniel's] performance,
conduct or attitude." Glover Aff. at 2. Ms. McWhirter noted that
she gave Mr. McDaniel a positive April 2009 review, rating him
"fully successful." McWhirter Aff. at 3. Ms. McWhirter also
stated that she never received any Complaints about Mr. McDaniel
until Ms. Speight became Acting Director. *Id.* Both Mr. Glover
and Ms. McWhirter state that they do not have a basis to
conclude that Mr. McDaniel was terminated because of his race or
sex. Glover Aff. at 5; McWhirter Aff. at 6.

## II.  DISCUSSION

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate if the pleadings on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Tao,* 27 F.3d at 638. The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.,* 477 U.S. at 324. In employment discrimination cases, summary judgment is appropriate "where either evidence is insufficient to establish a *prima facie* case, or, assuming a *prima facie* case, there is no genuine issue of material fact that the defendant's articulated non-discriminatory reason for the challenged decision is pretextual." *Paul v. Fed. Nat'l Mortgage Ass'n,* 697 F. Supp. 541, 553 (D.D.C. 1988) (citations omitted).

**B. Termination of probationary employees under 5 C.F.R. § 315.803-04**

Federal regulations require that agencies "shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his services during this period if he fails to demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803. As reasoned by the Fifth Circuit:

> There is ample basis for Congress's concluding that a healthy Civil Service System . . . would itself be jeopardized or weakened by denying the Government the benefit available in nearly all selective programs of testing the competency and capacity of the new employee during a fixed but limited probationary or trial period.

*Jaeger v. Freeman*, 410 F.2d 528, 531 (5th Cir. 1969). An agency must terminate probationary employees during their trial period if the employee "fails to demonstrate his fitness or his qualifications for continued employment . . . ." 5 C.F.R. § 315.804; *see also Stanton v. Reukauf*, 10-CV-633 RLW, 2012 WL 379931, at *5 (D.D.C. Feb. 6, 2012), *aff'd,* 12-5390, 2013 WL 3357807 (D.C. Cir. June 20, 2013) (noting that managers have maximum discretion to retain or remove probationary employees) (citations omitted).

**C. Title VII and Section 1981**

Title VII of the Civil Rights Act of 1964 prohibits adverse

employment actions on the basis of "race, color, religion, sex or national origin." *See* 42 U.S.C. § 2000e-2(a)(1).[2] Race discrimination claims under Section 1981 require proof of intentional discrimination. 42 U.S.C. § 1981. Both Title VII and Section 1981 claims may be proven through direct evidence, or with indirect evidence using the *McDonnell Douglas* burden-shifting framework. *Robinson v. Chao*, 403 F. Supp. 2d 24, 33 (D.D.C. 2005) (citation omitted).

Courts have not explicitly defined what constitutes "direct evidence," but "it is clear that at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Brady v. Livingood*, 456 F. Supp. 2d 1 at 6 (D.D.C. 2006) (quoting *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996)) (internal quotations and citations omitted); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251-52

---

[2] Although Mr. McDaniel alleges in his complaint that he was unlawfully terminated due to his race and gender, his Opposition Memorandum mentions gender discrimination once in a footnote: "Ms. Speight's comment by a Black female to a Black male suggest gender bias as well." Pl.'s Mem. Opp., ECF No. 35 at 10. This conclusory allegation is insufficient to prevail on summary judgment because other than the fact that a majority of his colleagues were black women, Mr. McDaniel cites no specific facts sufficient to support an "inference of discrimination" based on his gender.

(O'Connor, J., concurring) (noting that while potentially probative of discrimination, "stray remarks do not satisfy a plaintiff's burden of proving discrimination by direct evidence.").

Where direct evidence of discrimination is not present, a plaintiff may indirectly prove discrimination through the *McDonnell Douglas* burden-shifting framework. First, the plaintiff must make a *prima facie* case of racial discrimination by presenting credible facts. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Abdelkarim v. Tomlinson*, 605 F. Supp. 2d 116, 120-21 (D.D.C. 2009).[3] Once a prima facie case has been made, the burden shifts to the defendant to rebut the presumption of discrimination by "producing evidence that the adverse employment action were taken for a legitimate, nondiscriminatory reason." *Id.* Finally, if the rebuttal is

---

[3] A plaintiff makes out a prima facie case of race discrimination under Title VII and Section 1981 by establishing that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Id. Etoh v. Fannie Mae*, 883 F. Supp. 2d 17, 35 (D.D.C. 2011) (citing *Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 144 (D.C. Cir. 2008); *see also Chao*, 403 F. Supp. 2d at 33 ("The standards and order of proof in section 1981 cases have been held to be identical to those governing Title VII disparate treatment cases.") (citation omitted).

successful, the burden shifts back to the plaintiff to show that the employer's nondiscriminatory reason was pretext. *Id.*

However, where the defendant asserts a legitimate, non-retaliatory explanation for the alleged adverse actions, "the district court should . . . proceed[] to the ultimate issue of [discrimination] *vel non* instead of evaluating whether [plaintiff] made out a prima facie case." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (citing *United States Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (holding that once an employer asserts a legitimate, nondiscriminatory reason for its action, it "has done everything that would be required . . . if the plaintiff had properly made out a *prima facie* case," so "whether the plaintiff really did so is no longer relevant.")).

Here, Mr. McDaniel's performance and behavior issues cited by Defendant constitute legitimate non-discriminatory reasons for his termination. Therefore, the question before the Court is whether Mr. McDaniel has alleged sufficient facts for a reasonable jury to agree with him that Defendant's stated reasons for his termination were in fact pretext for racial discrimination. *Pardo-Kronenmann v. Donovan*, 601 F. 3d 599, 603-604 (D.C. Cir. 2010) (holding that once a non-discriminatory reason is given for an employer's action, "the sole remaining question" becomes "whether, based on all of the evidence, a

reasonable jury could conclude that [defendant's] proferred reason for the [action] was pretext for [discrimination].")

### D. Mr. McDaniel's racial discrimination claim fails

Defendant argues that it was required to terminate Mr. McDaniel during his probationary period because of his unsatisfactory performance and behavior. Def.'s Mem. Supp. at 22. Mr. McDaniel does not respond to Defendant's probationary period argument. *See generally* Pl.'s Mem. Opp. Instead, Mr. McDaniel argues that Ms. Speight's alleged comments that he should "stop acting white" and that she was going to "get rid of him" constitute direct, or in the alternative, circumstantial evidence of discrimination. Pl.'s Mem. Opp. at 8. Mr. McDaniel's alleged direct and circumstantial evidence will be analyzed in turn.

#### 1. Ms. Speight's alleged statements do not constitute direct evidence of discrimination

Mr. McDaniel alleges that he was told he "would likely suffer an adverse employment action at the same time he was reminded that the decision maker considered his race (color) an issue by making an invidious reference to his not being 'white.'" *Id.* at 12-13. However, the record evidence does not support Mr. McDaniel's contention. First, Mr. McDaniel misrepresents the context of Ms. Speight's alleged "get rid of you" statements; and second, no evidence in the record—not even

Mr. McDaniel's deposition testimony——supports a finding of temporal proximity between the two statements.

Mr. McDaniel's own testimony confirms that the context of Ms. Speight's comments about "getting rid of" him were made in reference to where his position should fall on the NCRS's organizational chart. McDaniel 2014 Dep., ECF No. 32 at 80; 26: 6-20. During Mr. McDaniel's 2011 deposition, he testified that he could not remember the exact dates, but that Ms. Speight told him several times that she was "going to get rid of you, either you or your job is going to go or both, safety and health is not a function, you are not going to be part of Human Resources." McDaniel 2011 Dep., ECF No. 32 at 8; 68: 8-13. Mr. McDaniel also testified that Ms. Speight mentioned in a meeting with several other people that "safety may be moving away to a different department." *Id.* at 9; 73: 18-20. Ms. Speight even had Mr. McDaniel complete research to see where his position was typically located in other agencies. *Id.*; 73: 21-22. Mr. McDaniel's Complaint also mentions these facts. Compl. ¶ 10 ("Ms. Speight claimed not to approve of having NRCS's Safety & Occupational Health Manager job . . . within the agency's HR unit . . . .").[4] As noted above, Mr. McDaniel does not allege

---

[4] Mr. McDaniel alleges that Ms. Speight "often threateningly pointed out to plaintiff that she could fire him at any time - for no reason all - during his probationary period . . . ." Compl. ¶ 10. Although arguably unkind, Ms. Speight's alleged

that Ms. Speight made the "stop acting white" comment in his
Complaint. *See generally* Compl.

Moreover, Mr. McDaniel does not allege in his Complaint,
nor did he testify during his 2011 or 2014 depositions, that Ms.
Speight's "get rid of" and "stop acting white" comments were
made contemporaneously. *Id.* Whereas Mr. McDaniel testified that
Ms. Speight made comments about the placement of his position
"several times," he alleges that she made the "stop acting
white" comment only "on one occasion." McDaniel 2011 Dep., ECF
No. 32 at 8; 68: 8-13. Thus, it is only in Mr. McDaniel's
response brief to Defendant's motion that the theory of a
relationship between Ms. Speight's "get rid of" and "stop acting
white" comments is suggested. *See generally* Pl.'s Mem. Opp.
Based on the record evidence before the Court, no reasonable
juror could agree with Mr. McDaniel's argument that there is
evidence of a temporal relationship between Ms. Speight's
alleged "get rid of" and "stop acting white" statements. Absent
such a temporal nexus, the comments do not constitute direct
evidence of racial animus.

---

statement was accurate and does not evidence unlawful
discrimination. *See e.g., Yu*, 28 Fed. Appx. at 970 (holding that
an agency "need not show unsatisfactory performance in order to
discontinue employment during a probationary period.").

The Court must also consider whether Ms. Speight's alleged "stop acting white" statement independently constitutes direct evidence of racial discrimination. Because Mr. McDaniel does not allege the statement was made in reference to the decision to terminate Mr. McDaniel, the statement cannot be considered direct evidence of racial discrimination. *See* McDaniel 2011 Dep., ECF No. 32 at 8; 68: 8-13; *Plummer v. Safeway, Inc.*, Civ. No. 93-0316 (PLF), 1995 WL 129100, at *4 (D.D.C. Mar. 17, 1995) (describing direct evidence of racial animus as "statements that the plaintiff is being fired because of his race or gender."). This critical fact distinguishes this case from *Ayissi-Etoh v. Fannie Mae*, the principal case relied on by Mr. McDaniel to support his argument of direct racial discrimination. Pl.'s Mem. Opp., ECF No. 35 at 9.

In *Ayissi-Etoh*, the D.C. Circuit reversed the District Court's granting of summary judgment on a racial discrimination claim where a superior was alleged to have justified not giving an African American employee a pay raise by stating, "for a young black man like you, we are happy to have your expertise, I think I'm already paying you a lot of money." 712 F.3d 572, 576 (D.C. Cir. 2013). Although the employer denied making the statement, the Circuit concluded that the "young black man" statement made in this context was sufficient direct evidence of discrimination entitling *Ayissi-Etoh* to a jury trial. *Id.* at

577-78. Critically, the alleged statement in *Ayissi-Etoh* was evidence of racial animus related (directly) to the adverse action (i.e. no pay raise for the "young black man").

Here, Mr. McDaniel alleges that Ms. Speight told him to "stop acting white," but Mr. McDaniel does not allege a specific date that this statement was made, nor does he draw a legitimate connection between the alleged "stop acting white" statement and his termination. McDaniel 2011 Dep., ECF No. 32 at 8; 68: 8-13. Again, Mr. McDaniel fails to allege that Ms. Speight made the "stop acting white" comment in his compliant. For these reasons, Mr. McDaniel fails to establish any direct evidence of racial discrimination.

### 2. Mr. McDaniel fails to show that Ms. Speight's alleged "stop acting white" comment is indirect evidence of racial discrimination

Mr. McDaniel may still establish that the reasons given for his termination were pretext for actual racial animus through indirect, circumstantial evidence. The Court must analyze whether a jury "could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff ... or any contrary evidence that may be available to the employer." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C.

Cir. 2016) (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)).

Mr. McDaniel's argument that Ms. Speight's alleged "stop acting white" comment creates an issue of triable fact for a jury as indirect evidence of racial animus fails for the same reasons that the statement alone does not constitute evidence of direct racial animus. As highlighted by Mr. McDaniel, a remark can "provide an inference of discrimination when the remark was (1) made by the decision maker; (2) around the time of the decision; and (3) in reference to the adverse employment action." Pl.'s Mem. Opp. at 10; *quoting Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). As discussed above, Mr. McDaniel does not allege that the "stop acting white" statement was made around the time of the decision to terminate him, or in reference to his termination. Ms. Speight's alleged "stop acting white" statement therefore does not alone establish pretext.

### 3. Mr. McDaniel's other arguments related to pretext fail

Mr. McDaniel makes several other arguments relating to pretext. Mr. McDaniel could establish a triable issue relating to pretext by demonstrating that the employer treated similarly situated employees outside of Mr. McDaniel's protected class more favorably, a showing of inconsistent or dishonest explanations, deviation from established procedures or criteria,

or a pattern of poor treatment of employees in the same protected group as Mr. McDaniel. *Id.; See also Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO,* 548 F.3d 137, 144 (D.C.Cir.2008) ("A plaintiff, who retains the burden of persuasion throughout, may show pretext in a number of ways, including by offering evidence of more favorable treatment of similarly situated persons who are not members of the protected class or that the employer is lying about the proffered justification." (citation omitted)).

### a. Mr. McDaniel cites no evidence that similarly situated employees were treated more favorably

Mr. McDaniel argues that a jury could find that Ms. Speight concealed her termination of another male employee for similar "misconduct." Pl.'s Mem. Opp. at 20. However, Mr. McDaniel does not explain how this fact supports his theory of termination based on pretext. *Id.* Indeed, only if white employees who demonstrated similar behavior and performance problems *were not terminated* within their probationary periods would Mr. McDaniel be able to show pretext via inconsistent treatment of those similarly situated individuals. *McKenna v. Winberger*, 729 F. 2d 783 (D.C. Cir. 1984) (holding that a probationary employee was not similarly situated to a permanent employee and noting that agency regulations "mandated that probationary employees with serious performance problems were to be terminated, even if

those problems would not have been good cause for terminated a permanent employee").

Mr. McDaniel does not attempt to show that similarly situated probationary employees who were not African American were treated more favorably. *See generally*, Pl.'s Mem. Opp. Indeed, the only relevant evidence in the record favors Defendant. Ms. Speight was asked during her deposition if she terminated any other employees during their probationary period. Speight Dep., ECF No. 32 at 52; 158-161. She confirmed that she terminated close to ten individuals during their probationary period. *Id.* Ms. Speight specifically testified that she was delegated the authority to terminate a white male during his probationary period for similar behavior displayed by Mr. McDaniel——disrespectful body language and being argumentative with the head of the agency. *Id.* Because Mr. McDaniel has failed to produce any evidence of similarly situated employees not part of his protected class who were treated more favorably during their probationary periods, no reasonable juror could conclude his termination was pretext for racial discrimination on this basis.

### b. Conflicting testimony about who decided to terminate Mr. McDaniel does not establish pretext

Mr. McDaniel argues that Ms. Speight made a "knowingly false" statement related to who made the decision to terminate

him. Pl.'s Mem. Opp. at 11 (citing Ms. Speight's Affidavit "I did not made the decision to terminate Mr. McDaniel."). Mr. McDaniel points to the testimony of Ms. Gray and Ms. Toomer who later testified that Ms. Speight did make the termination decision. *Id.* Mr. McDaniel cites *Evans v. Sebelius* for the proposition that "conflicting testimony regarding who made the decision to take the adverse employment action is 'precisely the type of factual dispute that must be resolved in a jury room rather than in the pages of the Federal Reporter.'" *Id.* at 12 (quoting *Evans*, 716 F.3d 617, 622-23 (D.C. Cir. 2013)). Mr. McDaniel's parenthetical summary of *Evans* is misleading. First, Mr. McDaniel fails to acknowledge that Evans was a career federal employee, not a new federal employee in her probationary period like Mr. McDaniel. *Evans*, 716 F.3d at 618. Second, the Circuit concluded there was a triable issue of fact for a jury to decide based on at least three major substantive pieces of evidence, none of which are present in an equivalent way here. The entirety of the Circuit's reasoning in *Evans* speaks for itself:

> In the end, the record supports two plausible
> interpretations of what happened. One view,
> urged by Evans, is that Morrissey decided not
> to create the position because Evans and
> another African American had been selected to
> fill the two spots. The other view, urged by
> the government, is that no one in the incoming
> Administration championed the creation of the
> LDDS position. As an appellate court reviewing

> the district court's grant of summary
> judgment, we have no authority to choose
> between these competing views. Given our
> "obligation to draw reasonable inferences in
> [Evans's] favor," *Salazar,* 401 F.3d at 509,
> and given the record evidence that HHS (1)
> promoted whites but not African Americans
> during the hiring controls, (2) offered
> inconsistent and inaccurate explanations, and
> (3) is unable to identify who cancelled the
> LDDS position, a reasonable jury, especially
> in light of Powell's testimony about
> Morrissey's and McCormick's comments, could
> find the Secretary's proffered explanation to
> be nothing more than a veil for racial
> discrimination. Ultimately, this is precisely
> the type of factual dispute that "must be
> resolved in a jury room rather than in the
> **56 *623 pages of the Federal Reporter."
> *Czekalski v. Peters,* 475 F.3d 360, 362
> (D.C.Cir.2007).

*Id.* at 617, 622–23. Mr. McDaniel cites to no authority where a

dispute about who actually terminated a probationary federal

employee alone created a triable issue of fact for a jury to

consider.

### c. Mr. McDaniel fails to show that an alleged shift in the justification for his termination shows pretext

Mr. McDaniel next argues that Ms. Speight's shifting

justification from a critique of his performance to "her

personal and subjective feels [sic] about his 'conduct' would

support a jury finding of pretext and an inference of

discrimination." Pl.'s Mem. Opp. at 14. Mr. McDaniel cites to

*Aka v. Washington Hosp. Ctr.* for the proposition that

courts treat an employer's "subjective considerations with
caution." 156 F.3d 1284, 1298 (D.C. Cir. 1998). Mr. McDaniel's
application of this principle is again, however, taken out of
context.

The *Aka* case dealt with alleged age and disability
discrimination based on Defendant Washington Hospital Center's
failure to re-hire Mr. Aka for a new position after he had heart
surgery due to what one individual perceived as a "lack of
enthusiasm" expressed by Mr. Aka for the new position. *Id.* In
contrast, Mr. McDaniel's behavior in the workplace, including
raising his voice and expressing dismissive body language to
superiors, was observed by several employees. *See e.g.* Cooke
2011 Dep., ECF No. 32 at 25, Ex. 2 at 117:18 – 118:1; Detter
2011 Dep., ECF No. 32 at 53, Ex. 4 at 59:5-59:17 ("I remember []
when I heard a loud and angry male voice coming through the wall
from the next – from the office next door . . . the incident was
unusual because it was not normal to be able to hear voices
through the wall."). Moreover, even if Mr. McDaniel's contention
that Ms. Speight "was the only official . . . to desire that Mr.
McDaniel be removed from his position," is true, it does not
create a triable issue of fact for a jury because Mr. McDaniel
cites to no authority prohibiting a manager at a federal agency
from terminating an individual during their probationary period
for unprofessional behavior in the workplace. *Id.* at 12; *see*

*also Francis v. Dist. of Columbia*, 731 F. Supp. 2d 56, 71
(D.D.C. 2010) ("[T]he issue is not 'the correctness or
desirability of [the] reasons offered ... [but] whether the
employer honestly believes in the reasons it offers.'")(quoting
*McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373
(7th Cir. 1992)).

### d. Mr. McDaniel's allegations of a conspiracy do not establish pretext

Finally, Mr. McDaniel argues that the record evidence
presents a triable issue of material fact relating to whether
Ms. Speight was "intimidated by and resented Mr. McDaniel as a
young, well-educated, African American male professional, and
whether because of her animus against Mr. McDaniel she fired him
based upon fabricated reasons." Pl.'s Mem. Opp. at 26. Mr.
McDaniel alleges the other managers were similarly intimated and
convinced by Ms. Speight to participate in a cover up of the
racial animus driving his termination. *Id.* 23-24. Defendant
maintains that this argument is mere speculation. Def.'s Reply
at 17. The Court agrees.

Mr. McDaniel "assumed" that those involved in the decision
to terminate him (Ms. Gray and Ms. Toomer) "had a common mind
frame" as Ms. Speight and discriminated against him with "the
same ideology, that it was not possible for a young, black male
to inform her of whether it be the EMS or anything else related

to safety . . . ." McDaniel 2011 Dep., ECF No. 32, 12-13; 116:4-14. Beyond these assumptions and speculation, Mr. McDaniel offers no evidence in the record or allegations related to a conspiracy orchestrated by Ms. Speight and the other managers to terminate him based on his status as a successful African American male. Thus, Mr. McDaniel's effort to show pretext based on a conspiracy led by Ms. Speight fails. *Ryan v. Reno,* 168 F.3d 520, 524 (D.C. Cir. 1999) ("[t]he more valid a reason appears upon evaluation, the less likely a court will be to find that reason pretextual.") (quoting *Brazil v. United States Dep't of Navy,* 66 F.3d 193, 197 (9th Cir.1995)).

For all of these reasons, Mr. McDaniel's effort to show that the reasons given for his termination were pretext for unlawful discrimination fail. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249-50 (1986) (noting that where the evidence is merely colorable, or is not significantly probative, summary judgment may be granted); *Brady*, 520 F. 3d 490 at 495 ("If the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting the jury to conclude that the employer is lying about the underlying facts.").

### 4. CONCLUSION

For the foregoing reasons, and because there is no genuine issue of material fact that the defendant's articulated non-

discriminatory reason for the challenged decision is pretextual,

Defendant's Motion for Summary Judgment is **GRANTED**. An Order

accompanies this Memorandum Opinion, filed this same day.

**SO ORDERED.**

**Emmet G. Sullivan**
**United States District Court**
**September 23, 2016.**